IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER FREITICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) NO. 09-cv-1414 |
| | ) |
| SMS RAIL LINES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**RUFE, J.**                                                                              September 17, 2010

Before the Court is Defendant SMS Rail Lines's Motion for Summary Judgment,[1] requesting that the Court dismiss all claims against it as a matter of law.

### I. FACTUAL AND PROCEDURAL HISTORY

In February 2006, Plaintiff Christopher Freitick was hired by Defendant, a Class III Switching Railroad company,[2] to perform the job of a boom truck operator and railroad track laborer.[3] Plaintiff passed a written test as a condition to be eligible to work on railroad tracks.[4] Plaintiff learned to set railroad track spikes through "on the job" training.[5]

---

[1] Document No. 22.

[2] As defined by the Surface Transportation Board, railroads are classified based on their annual operating revenues and Class III railroads are typically local short line railroads, serving a very small number of towns or industries. See Surface Transportation Board 1996/1997 Annual Report, March 16, 1998, at 6.

[3] Pl.'s Response to Def.'s Mot for Summ. J., Ex. G, [Document No. 25-6], at 5; Cert. of Gary Klein in Supp. of Def.'s Mot for Summ. J. [Document No. 22-7], at 2.

[4] Pl.'s Response to Def.'s Mot for Summ. J. [Document No. 25], at 4.

[5] Id., Ex. B, [Document No. 25-1], at 30.

1

On August 5, 2008, Plaintiff participated in a daily staff meeting at the start of his shift, at which his assignment for the day was discussed.[6] Plaintiff and two fellow track laborers, Justin Wolfe and George Sutch, had been assigned the task of building a new track-switch panel, off track, by using a ten (10) pound steel maul head to manually set (.8) pound steel spikes two (2) inches into treated hardwood railroad ties.[7] Donny Smith, an independent contractor hired by Defendant to assist in the project, was also present when Plaintiff and his co-workers were building the track panel.[8] Although Smith was delegated by Defendant as the "foreman" in charge of the job site, Plaintiff's supervisor, Gary Klein, was ultimately responsible for ensuring on site safety.[9]

Later that day, Plaintiff was injured while in the process of setting the track when a steel spike "shot out of the tie."[10] Defendant's official Incident Report, as documented by Defendant's Safety Coordinator Robert Michel, stated that "Plaintiff tapped the track spike, swung his hammer with great force, missed the spike, and the track spike flew up and struck the back of Plaintiff's left wrist causing a laceration."[11] Other than Plaintiff, there were no eye witnesses to the accident.[12] Plaintiff was not wearing Personal Protective Equipment ("PPE"), e.g. his leather work gloves, at

---

[6] Cert. of Gary Klein in Supp. of Def.'s Mot for Summ. J., at 3.

[7] Pl.'s Response to Def.'s Mot for Summ. J., Ex. B, at 28, 29, Ex. C, [Document No. 25-3] at 9; Cert. of Gary Klein in Supp. of Def.'s Mot for Summ. J., at 3.

[8] Pl.'s Response to Def.'s Mot for Summ. J., Ex. C, at 7.

[9] Id, Ex. E, [Document No. 25-5] at 20-22.

[10] Cert. of Gary Klein in Supp. of Def.'s Mot for Summ. J., at 3; Pl.'s Response to Def.'s Mot for Summ. J., Ex. B, at 35.

[11] Def.'s Mot for Summ. J., Ex. D [Document No. 22-7].

[12] Pl.'s Response to Def.'s Mot for Summ. J., Ex. B [Document No. 25-2], at 3, Ex. C, at 6, Ex. D [Document 25-4], at 10, Ex. E, 6-8.

the time of his injury, even though Defendant had supplied the protective work gloves to all employees, including Plaintiff.[13] At the time of Plaintiff's accident, Klein, who had given the laborers their instructions earlier the same morning, was approximately five miles away from the site in his worksite trailer.[14]

Immediately after his accident, Plaintiff was taken to River Front Medical Facility for treatment and evaluation. Plaintiff was diagnosed with a severed tendon in his left wrist, multiple extensor tendon lacerations, and laceration of the majority of his superficial radial nerve, all of which injuries required surgery.[15] After interviewing Klein, however, Defendant determined that Plaintiff had failed to follow the company's Safety Procedures and therefore bore sole responsibility for his accident and resulting injuries.

Plaintiff filed the instant action on April 1, 2009, alleging that Defendant violated the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, et seq.[16] Plaintiff seeks compensatory damages for his physical injuries, past and future medical care, past and future mental/emotional distress, loss of enjoyment of life, as well as past and future lost earnings. At the conclusion of discovery in this matter, Defendant filed the instant Motion for Summary Judgment,[17] which is now fully briefed and ripe for disposition.

---

[13] Pl.'s Response to Def.'s Mot for Summ. J., Ex. B, at 35; Def.'s Br. In Supp. of Mot for Summ. J. [Document No. 22-9], at 14.

[14] Pl.'s Response to Def.'s Mot for Summ. J., Ex. C, at 8-9, Ex. E, at 19.

[15] Id, Ex. K [Document No. 25-10].

[16] 45 U.S.C. §§51, et seq. (1939).

[17] Document No. 22.

## II. LEGAL STANDARD

A moving party may be granted summary judgment with respect to any claim if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[18] A court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in making its determination.[19] An issue is "genuine" if a reasonable trier of fact could find for the nonmoving party in light of the evidence, and a court must consider the evidence in a light most favorable to the nonmoving party.[20] The nonmoving party may rebut the motion with the elements essential to maintain its case, through its use of "depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[21] There must be enough evidence for a reasonable juror to decide for the nonmoving party; a mere scintilla of evidence is not enough.[22] If the nonmoving party fails to meet its burden, summary judgment is appropriate.

## III. DISCUSSION

Pursuant to FELA, every railroad engaged in interstate commerce may be liable for injuries sustained by its employees resulting from the negligence of any of its officers, agents, or

---

[18] FED. R. CIV. P. 56 (2010 Revised).

[19] Id.

[20] See Sheridan v. NGK Metals Corp., 609 F.3d 239, 251 (3d Cir. 2010); Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986)).

[21] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted); see also, Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

[22] Anderson, 477 U.S. at 252.

4

employees, or from any defect or deficiency in its cars, tracks, roadbeds, or work areas.[23] FELA imposes on railroad companies a non-delegable duty to exercise reasonable care to provide all of its employees with a reasonably safe place to work, reasonably safe conditions to perform their duties, and reasonably safe tools and equipment to complete their jobs.[24] It is well settled in the Third Circuit that a railroad may be found negligent under FELA if it fails to prescribe, promulgate, and/or enforce adequate rules, procedures, and regulations for the safe operation of its equipment, tools, machinery, and appliances.[25]

In order to obtain relief under FELA, a plaintiff must establish that: (1) defendant is a common carrier; (2) plaintiff was employed by defendant at the time of the injury; and (3) defendant's negligence caused the injury.[26] A plaintiff must present evidence sufficient to provide a jury with a "rational basis" to conclude that "some negligence on the part of the railroad proximately contributed to the accident, and the issue may not be presented on pure conjecture."[27] In the Third Circuit, summary judgment is only appropriate in FELA cases where there is "zero probability" of employer negligence or where any such negligence contributed to the employee's injury.[28]

---

[23] See 45 U.S.C. § 51.

[24] See Carter v. Union R.R. Co., 438 F.2d 208, 210-211 (3d. Cir. 1971).

[25] See Kimbler v. Pittsburg & L.E.R. Co., 331 F.2d 383, 386 (3d. Cir. 1964).

[26] See Felton v. Southeastern Pa. Transp. Auth., 952 F.2d 59, 62 (3d Cir. 1991).

[27] Albergo v. Reading Co., 372 F.2d 83, 85 (3d Cir. 1966), cert. denied, 386 U.S. 983 (1967).

[28] Hines v. CONRAIL, 926 F.2d 262, 268 (3d Cir. 1991); Eckert v. Aliquippa & S. R.R. Co., 828 F.2d 183, 187 (3d Cir. 1987); Pehowic v. Erie Lackawanna R.R. Co., 430 F.2d 697, 699-700 (3d Cir. 1970)("trial court is justified in withdrawing FELA issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee").

In the instant matter, the only element in dispute is Defendant's alleged negligence and whether it caused Plaintiff's injury. The parties concede that Defendant is a "common carrier" and that Plaintiff was employed by Defendant at the time of his accident. It is also undisputed that "a flying spike is not an uncommon occurrence" in the course of manually setting railway spikes at SMS Rail Lines. Smith, Sutch, and Klein all testified to this fact in their respective depositions and Plaintiff does not dispute this testimony.[29]

The parties, however, strongly disagree as to whether Plaintiff "was the sole physical cause of his accident."[30] As argued in its Motion, Defendant's theory is that Plaintiff's "own reckless use of the spike maul" was the "proximate cause of Plaintiff's accident" and that Plaintiff was "aggressively swinging his spike maul when he struck the spike off center. . .and the spike flew back at him".[31] Plaintiff disputes Defendant's theory of "recklessness," and it is uncontested that Plaintiff is the sole witness to his accident and his actions immediately prior to the accident.[32]

It is undisputed that Plaintiff had work gloves available to him, but chose not to wear them. What is materially disputed by the parties, however, is whether Plaintiff knew prior to his accident that he was required to wear the gloves while setting railroad spikes, and whether Defendant's actions or inactions, resulting in Plaintiff's lack of knowledge, was the proximate cause of Plaintiff's sustained injuries.

---

[29] Pl.'s Response to Def.'s Mot for Summ. J., Ex. E, at 15, Ex. C, at 15-16, Ex. D, at 8.

[30] See Def.'s Reply In Supp. of Mot for Summ. J. [Document No. 26], at 2.

[31] Def.'s Br. In Supp. of Mot for Summ. J., at 11.

[32] See Pl.'s Response to Def.'s Mot for Summ. J., Ex. B [Document No. 25-2], at 3, Ex. C, at 6, Ex. D, at 10, Ex. E, 6-8.

Plaintiff contends that Defendant did not make Plaintiff aware of the "requirement" to wear gloves until after his injury.[33] Plaintiff offers Klein's deposition testimony in support of his position: Klein testified that when he began working for Defendant in February of 2008 (two years after Plaintiff began his employment), he instituted a practice of training new employees to watch a series of videos concerning safety.[34] He also admitted that Plaintiff was not directed to watch these safety videos until after he was injured.[35] Conversely, Defendant argues that Plaintiff should have known about the requirement to wear work gloves when setting spikes because Defendant allegedly gave Plaintiff a copy of its On-Track Safety Rules and Procedures ("Safety Rules") when Plaintiff began working for the company two years prior. Plaintiff counters that even though he had been given a copy of the Safety Rules at some point prior to his accident, the Safety Rules were silent with respect to setting spikes or the use of gloves and further, that Defendant had no written rules requiring its laborers to wear gloves when setting spikes.

Throughout its Motion, Defendant contends that "the fact that an accident occurred does not create any presumption of or prove negligence on the part of the employer" and argues that "Plaintiff was the sole cause of his accident" because "Plaintiff. . .chose where to place the spikes he was setting, chose how to hold the spike he was setting at the time he injured himself, chose how long to tap the spike, and chose the strength and path of his up swing."[36] Defendant argues

---

[33] Pl.'s Response to Def.'s Mot for Summ. J., Ex. A [Document No. 25-1], at 2.

[34] Id, Ex. D, at 13-14.

[35] Id. at 15.

[36] Def.'s Br. In Supp. of Mot for Summ. J., at 6.

7

that "there is no evidence that anything was wrong with the spikes, ties, or maul being used by Plaintiff or that there was anything unreasonably dangerous about the surrounding area in which he was working" and further contends that "Plaintiff has not identified and established a negligent act by SMS Rail that proximately caused the spike Plaintiff was setting to fly back and pierce his wrist."[37] Defendant also maintains that its Safety Rules included "express and repeated instruction that employees are responsible to comply with all rules and instructions. . .to maintain and wear PPE. . .[as well as] specific rules for use of a spike maul, setting spikes and driving spikes."[38]

Conversely, Plaintiff states that "nobody told him he had to wear safety gloves - it wasn't mandatory."[39] Plaintiff testified in his deposition that "he had never been disciplined for not wearing gloves while setting spikes or at any other time."[40] Plaintiff further maintains that immediately prior to his accident, Defendant failed to comply with its own Safety Rules, which required that a designated "Employee in Charge" be responsible for the safety, instruction, performance and protection of all employees under his or her care, because Smith, the job site foreman, was not physically located in a position where he could observe the laborers performing their jobs and Klein, Plaintiff's supervisor, was off site five miles away.

Plaintiff argues that "despite the potential danger associated with manually setting spikes, SMS Rail Lines never clearly informed or trained the Plaintiff to wear work gloves at all

---

[37] Def.'s Br. In Supp. of Mot for Summ. J., at 6, 13.

[38] See Cert. of Gary Klein in Supp. of Def.'s Mot for Summ. J.

[39] See Pl.'s Response to Def.'s Mot for Summ. J., Ex. B, at 39.

[40] Pl.'s Response to Def.'s Mot for Summ. J., at 18; Pl.'s Response to Def.'s Mot for Summ. J., Ex. B, at 35, Ex. C, at 46-47.

8

times."[41]  Plaintiff maintains that he was directed to observe Smith set railroad spikes in order to learn how to do it himself and testified at his deposition that his training to be a trackman/laborer at SMS Rail Lines was entirely "on the job."[42]  Plaintiff's Response Brief also provided deposition testimony from both Smith and Sutch in support of his position: Smith testified that he personally had not worn gloves on "multiple occasions" when setting spikes; Sutch (the owner's son) testified that he, too, had occasionally set spikes without wearing gloves.[43]  Sutch also testified that he had witnessed other workers not wearing gloves when setting spikes on multiple occasions, including Plaintiff and Wolfe.[44]

Viewing the evidence in a light most favorable to the nonmoving party, the Court finds that Plaintiff has presented sufficient evidence from which a jury could reasonably conclude that Defendant was negligent for failure to prescribe and enforce its own Safety Rules and/or properly train its employees.  While the Court agrees with Defendant that "Plaintiff's [deposition] testimony stating. . .that 'SMS Rail just wanted the job done' [does not] equate to negligence,"[45] the Court finds that in as much as the parties contest the material issue of whether Defendant provided sufficient training, warnings, supervision, or enforcement to its employees that could have prevented the severity of Plaintiff's injuries, which goes to the heart of Plaintiff's claims, this matter is most appropriate for a jury to decide.

---

[41]   Pl.'s Response to Def.'s Mot for Summ. J., at 11.

[42]   Pl.'s Response to Def.'s Mot for Summ. J. Ex. B, at 30-31.

[43]   Id. Ex. E, at 24-25, Ex. C, at 11-14.

[44]   Id. Ex. C, at 10-12.

[45]   Def.'s Br. In Supp. of Mot for Summ. J., at 13.

## IV. Conclusion

The Court finds that Defendant has not met its burden of showing an absence of evidence to support Plaintiff's claims of negligence under FELA. Further, the Court finds that genuine issues of material fact are in dispute and that it is inappropriate to decide this matter by summary judgment. Accordingly, Defendant's Motion is denied.

An appropriate Order follows.